UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff*, | § § | 6:20-CV-00986 |
| v. | § § | |
| RICKY J. DANIELS, JR., and ELPSS CAREER INSTITUTE LLC, | § § § | |
| *Defendants*. | § § | |

## THE UNITED STATES' ORIGINAL COMPLAINT

The United States, acting through the Department of Justice and on behalf of the Department of Veterans Affairs (VA), brings this action against Defendants Ricky J. Daniels, Jr. (Daniels) and ELPSS Career Institute LLC (ELPSS) to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729–33. In the alternative, the United States seeks damages and other monetary relief under the common law and equitable theories of payment by mistake and unjust enrichment. For its Complaint, the United States alleges as follows:

### INTRODUCTION

1. Daniels and ELPSS, a for-profit educational institution based in Killeen, Texas, improperly obtained more than $2.5 million in VA funds by misrepresenting ELPSS's qualifications to participate in VA programs and by falsely certifying ELPSS's compliance with VA rules and regulations governing those programs.

2. The Post-9/11 GI Bill, codified at 38 U.S.C. §§ 3301–27, provides educational benefits to eligible veterans and members of the armed services who enroll in qualified education or training programs. The VA remits tuition and fees directly to educational institutions, and provides students a monthly housing allowance and stipend for books and supplies.

3. The VA will not approve or pay for enrollment in any program for any period during which more than 85% of enrolled students have all or part of their tuition, fees or other charges paid by the educational institution or by the VA. This requirement is known as the "85/15 Enrollment Ratio."

4. In addition, the VA will not approve or pay for enrollment in any program not leading to a college degree if the educational institution offering the program has been operating for less than two years. This requirement is known as the "2-Year Rule."

5. To receive VA funds, ELPSS submitted an application in which Daniels certified that ELPSS had operated as an educational institution for the prior two years (*i.e.*, that the school satisfied the 2-Year Rule), and that it would comply with the 85/15 Enrollment Ratio.

6. These certifications were false. In truth, Daniels formed ELPSS less than a year before submitting an application to receive VA funds. And enrollment in ELPSS was comprised almost exclusively of students receiving VA benefits, many of whom did not regularly attend classes and enrolled only to receive a housing allowance and other subsidies.

7. The VA would not have remitted Post-9/11 GI Bill funds to ELPSS had it known about these false certifications.

## JURISDICTION AND VENUE

8. This action arises under the False Claims Act, 31 U.S.C. §§ 3729–33, and the common law theories of payment by mistake and unjust enrichment. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 31 U.S.C. § 3732(a).

9. Defendants' scheme to defraud the United States was carried out in Killeen and elsewhere within the Western District of Texas. This Court has personal

jurisdiction over the Defendants, and venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a).

## THE PARTIES

10.  Plaintiff is the United States of America, acting on behalf of the VA, an executive department of the United States.

11.  Defendant Ricky J. Daniels, Jr., is a natural person who currently resides in Little Rock, Arkansas. Daniels was the Director of ELPSS, certified that the school would comply with applicable VA rules and regulations, and was responsible for electronic submissions resulting in payment of tuition and fees by the VA.

12.  Defendant ELPSS Career Institute LLC is a Texas limited liability company that operated as a for-profit educational institution in Killeen, Texas. Records maintained by the Secretary of State for the State of Texas identify ELPSS's registered agent as El Paso Summer Slam, 4107 Dyer Street, Suite A, El Paso, Texas 79930, and its manager as Carla Daniels, 2921 Boyd Street, Little Rock, Arkansas 72204. El Paso Summer Slam is an assumed name of defendant Daniels.

## THE FALSE CLAIMS ACT

13.  The False Claims Act permits the United States to recover treble damages and civil penalties from any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment of approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B). A person found to have violated the False Claims Act is also liable to the United States for the cost of any civil action. *Id.* § 3729(a)(3).

14.  Under the False Claims Act, a person acts "knowingly" when he or she "has actual knowledge," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information."

31 U.S.C. § 3729(b)(1)(A). Liability does not require "proof of specific intent to defraud." *Id.* § 3729(b)(1)(B).

15. As relevant here, a "claim" under the False Claims Act includes "any request or demand, whether under a contract or otherwise, for money or property . . . that is presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2)(A)(i).

## THE POST-9/11 GI BILL

16. The Post-9/11 GI Bill provides financial support to service members, veterans, and eligible dependents who attend education or training programs taken at accredited colleges or universities and at certain schools or programs that do not grant college degrees. *See* 38 U.S.C. §§ 3301–27.

17. For eligible individuals, the Post-9/11 GI Bill pays up to 100% tuition and fee coverage, which is paid directly to the school. Students who are not active duty service members also receive a monthly housing allowance and stipend for books and supplies. *See* 38 U.S.C. §§ 3313(g)(3), (h).

18. The VA uses an internet-based system called "VA-ONCE" to process claims submitted for payment of tuition and fees by educational institutions. Each such institution must designate at least one certifying official who is authorized to submit claims through the VA-ONCE system, which are then processed and paid automatically based on the certification accompanying the claim.

19. Non-accredited educational institutions seeking to provide VA-eligible programs must first apply to their State Approving Agency, which oversees approval and compliance with federal guidelines. *See* 38 U.S.C. § 3676(a). The State Approving Agency for Texas is the Texas Veterans Commission (TVC).

20. The TVC also conducts annual on-site compliance visits of educational institutions that provide VA-eligible programs. Non-accredited institutions must

meet the requirements of 38 U.S.C. § 3676 ("Approval of nonaccredited courses") and 38 C.F.R. § 21.4254 ("Nonaccredited courses"), and are subject to the limitations set forth in 38 U.S.C. § 3680A ("Disapproval of enrollment in certain courses") and 38 C.F.R. § 21.4201 ("Restrictions on enrollment; percentage of students receiving financial support"), including the 85/15 Enrollment Ratio and the 2-Year Rule.

21. The 85/15 Enrollment Ratio and the 2-Year Rule address "substantial problems manifested with respect to nondegree vocational programs" under prior versions of the GI Bill. S. Rep. No. 94-1243, at 46 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5241, 5268. These requirements "minimize the risk that veterans' benefits would be wasted on educational programs of little value" by "weed[ing] out those institutions [which] could survive only by the heavy influx of Federal payments." *Cleland v. Nat'l Coll. of Bus.*, 435 U.S. 213, 219 (1978) (citation omitted). The 85/15 Enrollment Ratio and the 2-Year Rule reflect Congress's reasoned judgment that "established courses with a substantial enrollment of nonsubsidized students were more likely to be quality courses." *Id.* at 221.

## FACTUAL ALLEGATIONS

### A. Daniels Formed ELPSS in 2014.

22. In 2014, Daniels was teaching a small business management class at Cutt Master Barber College, located at 4107 Dyer Street, El Paso, Texas.

23. On or about May 27, 2014, Daniels submitted a commercial lease application on behalf of El Paso Summer Slam Academy for property located at 1300 Veterans Memorial Blvd, Killeen, Texas 76541. Daniels stated that El Paso Summer Slam Academy was a sole proprietorship and identified himself as its owner. Daniels listed the address of El Paso Summer Slam Academy as 4107 Dyer Street, El Paso, Texas—the same address as Cutt Master Barber College.

24. On or about July 11, 2014, ELPSS filed a certificate of formation with the Secretary of State for the State of Texas. The form listed El Paso Summer Slam as ELPSS's registered agent and Carla Daniels as ELPSS's manager.

25. On or about August 7, 2014, ELPSS filed an application for a certificate of approval with the Texas Workforce Commission. The application was signed by Carla Daniels, identified as ELPSS's Manager and President. ELPSS's mailing address was listed as 4107 Dyer Street, El Paso, Texas.

26. On or about September 26, 2014, Carla Daniels filed an assumed name certificate of ownership for ELPSS with the County Clerk for Bell County, Texas. The certificate listed ELPSS's physical business address as 1300 E. Veterans Memorial Blvd, Killeen, Texas 76541.

27. On or about October 21, 2014, Daniels executed an amendment to the lease for 1300 Veterans Memorial Blvd, changing the name of the tenant from "Ricky J. Daniels dba El Paso Summer Slam Academy" to "Ricky J. Daniels dba ELPSS Career Institute."

28. On or about December 1, 2014, the Texas Workforce Commission issued a certificate of approval to ELPSS.

29. Under Texas law, ELPSS was unable to "maintain, advertise, solicit for, or conduct any program of instruction" prior to receiving its certificate of approval from the Texas Workforce Commission. *See* Tex. Educ. Code § 132.051(a).

**B. ELPSS Applied for Approval to Receive VA Funds in 2015.**

30. On or about July 6, 2015, Daniels submitted to the TVC, on behalf of ELPSS, an application for approval to receive VA funds for a Small Business Management Administration course. Daniels listed the school's address as 1300 E. Veterans Memorial Blvd, Killeen, Texas 76541, and identified its owner as Carla Daniels.

31. In the application, Daniels certified that ELPSS "has operated as an educational institution for the last two years."

32. Daniels also certified that "adequate records . . . are kept to show attendance and progress or grades," that "satisfactory standards relating to attendance, progress, and conduct are enforced," and that the school would not enroll students receiving certain VA education benefits "when more than eighty-five (85%) percent of the students enrolled in the course(s) are having all or any part of their tuition, fees, or other charges paid to or for them by the school or the [VA]."

33. Among the supporting exhibits Daniels filed with the application were a school calendar, ELPSS's attendance policy and method of recording attendance, and ELPSS's progress policy and student conduct policy.

34. As part of its application to receive VA funds, ELPSS was required to designate a School Certifying Official responsible for certifying the accuracy of information submitted by the school for purposes of obtaining payments from the VA. Daniels was ELPSS's School Certifying Official.

35. Daniels signed and dated the application on June 30, 2015. Immediately above Daniels' signature appeared the following language: "I certify that the information contained in this application is true and correct to the best of my knowledge and belief. I also certify that the school will adhere to the statements of assurance identified in this application for approval as a condition of continued approval."

36. On July 30, 2015, TVC visited ELPSS in response to the application for approval of the Small Business Management Administration course. During the visit, TVC verified ELPSS's compliance with the 2-Year Rule by reviewing the files of seven students provided by Daniels. According to Daniels, these seven students— L.B, W.K, D.D, A.K, B.R, M.W, and W.R—had attended ELPSS at various times between March 2013 and July 2015.

37. Six of the seven students identified by Daniels—L.B, W.K, D.D, A.K, M.W, and W.R—were veterans. Four of the veterans—W.K., D.D., A.K., and M.W— had attended a course taught by Daniels at Cutt Master Barber College in El Paso.

Another—L.B.—had applied to Cutt Master Barber College, but did not enroll. Only two of the students—M.W. and W.R.—actually attended ELPSS. The file provided by Daniels for M.W. claimed enrollment between January and July 2015, while the file provided for W.R. claimed enrollment beginning in July 2015.

38.     On or about December 5, 2016, Daniels submitted on behalf of ELPSS an application to the TVC for approval to receive VA funds for a Solar Energy Technician course. Daniels again identified the school's address as 1300 E. Veterans Memorial Blvd, Killeen, Texas, and its owner as Carla Daniels.

39.     The application for the Solar Energy Technician course contained the same certifications as EPLSS's prior application. Daniels again certified that ELPSS "has operated as an educational institution for the last two years," that "adequate records . . . are kept to show attendance and progress or grades," that "satisfactory standards relating to attendance, progress, and conduct are enforced," and that the school would not enroll students receiving certain VA education benefits "when more than eighty-five (85%) percent of the students enrolled in the course(s) are having all or any part of their tuition, fees, or other charges paid to or for them by the school of the [VA]."

40.     Daniels signed and dated the application on December 5, 2016. Immediately above Daniels' signature appeared the following language: "I certify that the information contained in this application is true and correct to the best of my knowledge and belief. I also certify that the school will adhere to the statements of assurance identified in this application for approval as a condition of continued approval."

41.     On December 1, 2016, in advance of the second application, TVC conducted a survey visit of ELPSS. At that time, Daniels provided a Statement of Assurance of Compliance with 85/15 Enrollment Ratios for the Small Business Management Administration course, claiming VA enrollment of 39 out of 48 students (81%).

### C. Daniels Made Material False Statements in ELPSS's Application for Approval to Receive VA Educational Benefits.

42. In order to qualify to receive VA funds, Daniels made materially false statements in ELPSS's applications to the TVC, certifying that each of these false statements were true and correct.

43. Daniels falsely certified that ELPSS had "operated as an educational institution for the last two years." In fact, ELPSS was not formed until 2014—less than one year prior to the date of the initial application with the TVC.

44. When the TVC conducted an inspection of ELPSS's records to verify the school's compliance with the 2-Year Rule, Daniels used falsified student records to claim that students who had enrolled in or applied for a course he taught at Cutt Master Barber College in El Paso were ELPSS students. The two students identified by Daniels who actually did attend ELPSS did not enroll until 2015.

45. Daniels also falsely certified that the school would keep adequate attendance records, enforce attendance requirements, and comply with the 85/15 Enrollment Ratio.

46. Contrary to Daniels' express certification in the TVC applications, ELPSS did not enforce attendance requirements. Students came to class whenever they wanted and were given credit for completing weekly assignments. Some students came each day; others came once or twice a week but signed attendance sheets falsely indicating they had attended each day.

47. Daniels directed students who missed class to sign attendance sheets after the fact. Daniels asked the instructor of the Solar Energy Technician course to falsify attendance records so that students would not be dropped from the program.

48. During the government's investigation of this matter, former ELPSS students informed federal law enforcement officers that they had not regularly attended class or participated in an externship, yet were marked as present by Daniels or another instruction, and not dropped from the program. Some of these students

also stated that they (a) received payments for externships they had not completed; (b) enrolled in exchange for cash bonuses paid by ELPSS; or (c) enrolled solely to obtain the VA housing allowance.

49. Daniels and ELPSS also did not adhere to the 85/15 Enrollment Ratio at any point during the operation of the school.

50. Daniels allowed a number of students to attend ELPSS for free in order to appear to maintain compliance with the 85/15 Enrollment Ratio. Daniels would invoice a fictitious "endowment fund" for these students at an address belonging to a hotel in El Paso: 6789 Boeing Drive, El Paso, Texas 79925.

51. These "endowment fund" students did not in fact attend the classes in which they were supposedly enrolled. Even if they had, the 85/15 Enrollment Ratio applies to those who have "all or part of their tuition, fees, or other charges paid for them" by *either* the VA *or* "the educational institution." *See* 38 C.F.R. § 21.4201(a).

52. According to student files maintained by ELPSS, at least 93% of the school's students were veterans receiving VA educational benefits, while most of the others were the aforementioned "endowment students."

53. Upon information and belief, Daniels had actual knowledge that his statements and certifications made in connection with ELPSS's applications to the TVC and the TVC's initial site visit were false at the time he made them.

54. Alternatively, based on the facts and circumstances surrounding his submission of the application and his responsibilities as the founder and director of ELPSS, Daniels acted with deliberate indifference or reckless disregard of the truth or falsity of the statements described above.

55. As a result of the false statements described above, ELPSS obtained approval to participate in VA educational programs under false pretenses.

**D. Daniels Submitted False Claims to the VA for Education Benefits.**

56. After receiving approval to participate in VA education benefits programs, Daniels submitted claims for payment in the form of electronic certifications of enrollment to the VA using VA-ONCE.

57. To gain access to VA-ONCE, Daniels signed a memorandum of understanding in which he certified that he would "comply with all applicable laws, regulations, and VA requirements pertaining to certifications of enrollments and notices of change in student status" and that use of the system was subject to "all duties and liabilities pertaining to educational institutions," including with respect to "all certifications" and "any other provisions of law or regulation that apply."

58. Each electronic claim for payment submitted by Daniels incorporated by reference the certifications found on VA Form 22-1999, including: (a) that ELPSS "has exercised reasonable diligence in meeting all applicable requirements of Title 38, U.S. Code, and any failure by the institution to meet the requirements of the law will be reported promptly to VA;" (b) that ELPSS "agrees to report promptly to VA any enrollment change and any change due to unsatisfactory progress, conduct, or attendance;" and (c) that "the 85-15 ratio requirements have been satisfied."

59. Daniels' express certifications regarding ELPSS's compliance with these requirements were false, because ELPSS was not in compliance with the 2-Year Rule or the 85-15 Enrollment Ratio; did not enforce its progress or attendance policies; and never reported its failures to meet the requirements of Title 38 to the VA.

60. Upon information and belief, Daniels had actual knowledge that his certifications made in connection with the VA-ONCE electronic claims for payment were false at the time he made them.

61. Alternatively, based on the facts and circumstances surrounding his submission of the electronic claims for payment and his responsibilities as ELPSS's

Sole Certifying Official, Daniels acted with deliberate indifference or reckless disregard of the truth or falsity of the statements described above.

62. During the operation of this scheme, Daniels submitted no fewer than 143 false claims for payment to the VA using the VA-ONCE system. As a result, the VA disbursed $2,530,252.30 to ELPSS.

63. ELPSS was not entitled to any of these funds.

**E. Defendants' False Statements and False Claims Were Material.**

64. The VA would not have remitted Post-9/11 GI Bill tuition and fees to ELPSS had it known that Defendants (a) obtained approval from the TVC to offer VA-eligible programs under false pretenses; (b) were not complying with the 2-Year Rule or the 85/15 Enrollment Ratio; or (c) were not maintaining accurate attendance records or enforcing attendance requirements.

65. On August 22, 2017, after the United States initiated its investigation into ELPSS and Daniels, TVC suspended its approval of ELPSS. On September 12, 2017, TVC withdrew its approval altogether.

66. On November 29, 2017, unable to continue without VA funds, Daniels notified the Texas Workforce Commission that ELPSS would cease operations.

**COUNT I**
**Making or Using False Statements**
**Violation of the False Claims Act**
**31 U.S.C. § 3729(a)(1)(B)**

67. The United States re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

68. Defendants knowingly made, used, or caused to be made or used, one or more false records or statements material to a false or fraudulent claim. Specifically, Defendants made false statements to TVC in order to qualify to receive VA funds. Defendants also falsified student records, attendance sheets, and endowment fund

invoices to obtain approval for and continue to participate in VA educational benefits programs.

69. By virtue of these false records and statements, the United States incurred damages. The United States is entitled to treble damages under the False Claims Act, plus a civil penalty for each violation.

## COUNT II
### Presenting False Claims for Payment
### Violation of the False Claims Act
### 31 U.S.C. § 3729(a)(1)(A)

70. The United States re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

71. Defendants knowingly presented or caused to be presented one or more false or fraudulent claims for payment or approval. Specifically, Defendants submitted false certifications of student enrollment to VA. Each of these claims for payment included express certifications regarding ELPSS's compliance with federal rules and regulations governing Post-9/11 GI Bill benefits. At the time the certifications were made, ELPSS was not in compliance with these rules and regulations.

72. In addition, because Defendants obtained approval for ELPSS to participate in VA educational programs under false pretenses, every claim for payment made to the VA by Defendants was a false or fraudulent claim that resulted in the disbursement of funds to which ELPSS was not entitled

73. By virtue of these false claims, the United States incurred damages. The United States is entitled to treble damages under the False Claims Act, plus a civil penalty for each violation.

## COUNT III
### Unjust Enrichment

74. The United States re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

75. As a consequence of the acts described above, Defendants have received money from the United States to which Defendants were not entitled, which unjustly enriched Defendants, and for which Defendants must make restitution. Under the circumstances, in equity and good conscience, this amount should be returned to the United States.

76. The United States is entitled to recover such money in an amount to be determined at trial.

## COUNT IV
## Payment By Mistake

77. The United States re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

78. As a consequence of the acts described above, the United States paid money to Defendants based on a mistaken belief regarding Defendants' compliance with federal rules and regulations governing Post-9/11 GI Bill benefits. The United States would not have paid Defendants had it not been mistaken.

79. The United States is entitled to recover such money in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America prays for judgment in its favor and against Defendants Ricky J. Daniels, Jr., and ELPSS Career Institute LLC as follows:

A. On Count I and Count II (False Claims Act), treble the amount of the United States' damages in an amount to be proven at trial, together with the maximum civil penalties allowed by law, costs, post-judgment interest, and any such other relief as the Court deems just and proper;

  B. On Count III (Unjust Enrichment), the amount by which the Defendants were unjustly enriched, together with costs, pre- and post-judgment interest, and any such other relief as the Court deems just and proper; and

  C. On Count IV (Payment by Mistake), the amount the United States mistakenly paid the Defendants, together with costs, pre- and post-judgment interest, and any such other relief as the Court deems just and proper.

Dated: October 19, 2020    Respectfully submitted,

           GREGG N. SOFER
           United States Attorney

      By: */s/ Thomas A. Parnham, Jr.*
          THOMAS A. PARNHAM, JR.
          Assistant United States Attorney
          New York Bar No. 4775706
          903 San Jacinto Blvd, Suite 334
          Austin, Texas 78701
          (512) 916-5858 (tel)
          (512) 916-5854 (fax)
          thomas.parnham@usdoj.gov

          *Attorneys for the United States of America*